OPINION
{¶ 1} Defendant-appellant, Mahad Hassan Samatar ("appellant"), appeals from the judgment of the Franklin County Court of Common Pleas denying his petition for post-conviction relief brought under R.C. 2953.21. Because the grounds for relief set forth in appellant's petition either are barred by res judicata or fail to state a basis giving rise to the need for an evidentiary hearing, we affirm the trial court's order dismissing appellant's post-conviction relief petition.
 {¶ 2} A thorough discussion of the procedural history of this case is necessary to address and consider the issues raised herein.
 {¶ 3} Appellant was indicted by the Franklin County Grand Jury on February 26, 2001, on two counts of drug possession. Count One alleged that appellant knowingly obtained, possessed or used a Schedule I controlled substance, Cathinone, in violation of R.C. 2925.11, in an amount equal to or exceeding 100 times the bulk amount as defined in R.C. 2925.01. Count Two alleged that appellant knowingly obtained, possessed or used a Schedule IV controlled substance, Cathine, in violation of R.C. 2925.11, in an amount equal to or exceeding 50 times the bulk amount but less than 100 times the bulk amount as defined in R.C. 2925.01.
 {¶ 4} Appellant waived his right to a jury trial and the matter was tried before the court on August 14, 2001. Prior to the presentation of evidence, the prosecution moved to dismiss Count Two of the indictment. Thereafter, the parties presented their evidence.
 {¶ 5} The following summary of the evidence comes from this court's decision rendered in State v. Samatar,152 Ohio App.3d 311, 2003-Ohio-1639, at ¶ 11-22.
11. Columbus Police Detective Jerry Peters, a member of the Ohio Organized Crime Investigations Commission, Package Interdiction Task Force, testified that on February 15, 2001, he received a call from an employee of a local Federal Express ("FedEx") facility regarding a suspicious package. The FedEx International Air Waybill ("waybill") indicated that the package was shipped from Great Britain to "John Goodman" at "84 East Morrill Avenue, Apartment B, Columbus, Ohio, 43207" and contained "wiring equipment." Delivery of the package had been unsuccessful because the address was invalid. Protruding from the package were brownish-red stems of vegetation. Believing the vegetation to be khat (pronounced "cot"), Detective Peters arranged for the package to be picked up under controlled conditions.
12. "Khat" is the popular name of the plant catha edulis, "a shrub which growns wild and as a cash crop in Kenya, Somalia, Yemen, Djibouti and other countries of Northeastern Africa." * * * Khat leaves are typically chewed, a tradition deeply rooted in the social lives of persons in the Middle East and southeastern Africa. It is estimated that approximately 60 to 70 percent of Somalis in Somalia chew khat on a regular basis and/or brew it into tea and drink it.
13. Khat contains the psychoactive chemical cathinone, a stimulant. Cathinone is listed as a Schedule I controlled substance under Ohio law. See R.C. 3719.41, Schedule 1, (E)(2). Khat also contains the less potent stimulant, cathine, a Schedule IV controlled substance under Ohio law. See R.C. 3719.41, Schedule IV, (D)(1).
14. At approximately 8:50 p.m. on February 15, 2001, defendant arrived at the FedEx facility and presented a napkin upon which, among other things, a shipment control number matching that on the waybill and an address," 684 East Morrill Avenue, Apartment #B, 43207," were written. Defendant signed the name "John Goodman" on the signature record and took possession of the package. Defendant was subsequently arrested for possession of a controlled substance. The package was seized and the contents submitted for analysis to the laboratory at the Ohio Bureau of Criminal Investigation ("BCI").
15. According to Detective Peters, controlled substances are often shipped via a package delivery company such as FedEx. False names and addresses and invoices describing fictitious package contents are often used in the process. Detective Peters further testified that a bundle of fresh khat is generally sold in Columbus for $25 to $40. The price decreases to $15 per bundle as the khat ages and loses its freshness.
16. Gregory Kiddon, a forensic scientist with over 20 years of experience at BCI, conducted a chemical analysis of the khat. According to Kiddon, the package seized from defendant contained two smaller boxes, each of which contained several small bundles of khat shoots and stems. As part of his chemical analysis, Kiddon weighed each individual bundle and took a representative sample consisting of 10 or 11 grams from each bundle. Each of the samples was chopped into small pieces and ground together. The mixture was then tested. The samples were removed from the boxes on February 16, 2001, and were frozen until the chemical analysis was performed on July 24, 2001. Pursuant to the chemical analysis, Kiddon identified the Schedule I controlled substance known as cathinone in each sample. Kiddon further testified that he found no cathine in any of the samples.
17. Kiddon prepared a report of his findings, which was submitted as state's Exhibit 7. The report indicates that one of the boxes contained 85 leaf-wrapped bundles of shoots with a gross weight of 13,853 grams. Ten bundles were removed for testing with a net weight of 1,278.04 grams. The report further indicates that the other box contained 85 leaf-wrapped bundles of shoots with a gross weight of 14,292 grams. The bundles were removed fro testing with a net weight of 1,351.35 grams. According to the report, all of the samples were found to contain cathinone.
18. Defense counsel attempted to impeach Kiddon's testimony with an article issued by the United States Department of Health and Human Services, entitled "Basis For The Recommendation For Control of Cathinone Into Schedule I Of The Controlled Substances Act" ("HHS report"). Kiddon acknowledged that the article was authoritative. The report expressed the opinion that 100 grams of fresh khat is estimated to contain 36 mg of cathione and 120 mg of cathine, among many other chemicals. According to the report, within 72 hours of harvest, the naturally occurring cathinone rapidly decomposes into cathine. The report further stated that fresh khat contains 100 times more cathinone that dried khat.
19. Kiddon acknowledged the foregoing information contained within the report. Kiddon testified that he froze the plant material until the chemical analysis could be performed because he was aware that in the cathinone-to-cathine conversion process, some of the plant's psychotropic potency was lost. When pressed about his finding that the samples he tested contained cathinone, but no cathine, Kiddon admitted that he was surprised by the results but remained firm in his conviction that his chemical analysis was correct. Specifically, Kiddon stated that he could not "find any peaks that I could identify as cathine," and rejected defense counsel's suggestion that he misidentified the cathine as cathinone.
20. Defendant testified that he came to the United States in June 1998 from his native country of Somalia. He stated that he was familiar with the khat plant, as it was grown and chewed or used to brew tea in Somalia. Defendant further testified that it is a cultural tradition to chew khat at weddings. He further claimed that there was no stimulant effect in khat. According to defendant, khat possession is not illegal in Somalia. He further averred that he had never heard of cathinone and was unaware that khat contained cathinone.
21. Defendant testified that the khat at issue in this case was sent to the United States by a resident of London, England, named "Abdid," for use at a Somali wedding ceremony. Abdid asked defendant to pick up the package containing khat at the airport. According to defendant, Abdid gave him the shipment control number of the package but did not tell him the name that was on the package. Upon arrival at the FedEx facility, he presented the shipment control number he had been given. When the package was brought to him, he noticed the name written on it. He signed the log with the name that was written on the package.
22. According to defendant, the khat was harvested in Kenya and shipped to London by airplane. Defendant estimated that the khat was probably kept in Kenya for two to three days before it was shipped to England Defendant agreed that khat is sold in the Columbus Somali community for $20 to $40 a bundle.
 {¶ 6} At the conclusion of the evidence, the court granted the parties' request to file post-trial briefs. After consideration of the evidence and the parties' post-trial briefs, the court issued a decision on November 30, 2001, finding defendant guilty of Count One and, pursuant to the prosecution's recommendation, entered a nolle prosequi as to Count Two. By judgment entry filed December 3, 2001, the court sentenced appellant to serve a mandatory prison term of ten years and ordered him to pay a mandatory fine of $10,000.
 {¶ 7} On December 14, 2001, appellant filed a motion for a new trial. Appellant asserted that Kiddon's finding of cathinone but no cathine in the sampled khat was "scientifically impossible." Appellant asserted as follows: that such erroneous testimony constituted witness misconduct under Crim.R. 33(A)(2), that defense counsel was surprised by Kiddon's "no cathine" testimony, and, that such surprise warranted a new trial under Crim.R. 33(A)(3). Appellant attached the affidavit of Michael Jon Kell, a consultant with Private Clinic Laboratories, Inc., and an expert who had testified in several drug-related cases in the past. According to his affidavit, Dr. Kell asserted that:
Based on the current scientific knowledge of the khat plant, cathine, cathinone, and the conversion of cathinone to cathine over time I am of the professional opinion, to a reasonable certainty, that it is not chemically possible to have a quantity of harvested khat which contains cathinone but which contains no cathine.
(Appellant's Exhibit B, No. 15.) Appellant also maintained that the trial court's failure to recognize the "no cathine" anomaly in Kiddon's testimony constituted an abuse of the trial court's discretion warranting a new trial under Crim.R. 33(A)(1). Finally, appellant maintained that he was entitled to a new trial under Crim.R. 33(A)(4)(5) on the following two bases: (1) that the Ohio statutes and controlled substance schedules which prohibit the possession of cathinone do not provide "fair warning" to a person of ordinary intelligence that the possession of khat was similarly prohibited; and (2) that the sentence imposed upon him was not applicable to the facts of his case. Specifically, appellant argued that cathinone is a compound found in the plant khat and that the state should have been required to prove the amount of cathinone actually present in the khat possessed by appellant.
 {¶ 8} By decision and entry filed January 29, 2002, the trial court denied the motion for new trial. The trial court rejected appellant's contention that witness misconduct had occurred and concluded that Kell's disagreement with Kiddon did not mean that the state's witness had committed misconduct. The court also rejected the defense counsel's claim of surprise, concluding that the law did not guarantee that the defense would know everything that Kiddon would say and that the defense could have readily inferred a "no cathine" finding based upon the lab report which failed to mention cathine. Furthermore, the court noted that defense counsel was well aware of the literature indicating that cathine should be present and therefore that surprise under Crim.R. 33(A)(3) could not be shown because the defense had not shown that ordinary prudence could not have guarded against the alleged surprise.
 {¶ 9} The trial court noted that defense counsel could have requested a continuance of the bench trial in order to obtain an expert to support the proposed scientific theory. The court rejected appellant's claim that there had been an irregularity in the court's decision on guilt and concluded that there was sufficient evidence to support the state's contention that the substance involved contained cathinone.
 {¶ 10} Thereafter, on appeal, appellant asserted the following seven assignments of error for this court's review:
"[1.] The trial court erred and abused its discretion in failing to grant the motion for a new trial. The denial of the motion for new trial denied appellant due process, the right to present a defense and the effective assistance of counsel in violation of the state and federal constitutions.
"[2.] Appellant was denied the effective assistance of counsel guaranteed by the federal and state constitutions.
"[3.] To apply a statute banning knowing possession of cathinone to the possession of khat violates due process of law because it fails to give defendants fair warning of what behavior is prohibited, nor a fair opportunity to avoid criminal acts by an acquaintance with the published law.
"[4.] The trial court erred in failing to grant the Crim.R. 29 motion for acquittal as the evidence was insufficient as a matter of law. Additionally, the conviction was against the manifest weight of the evidence.
"[5.] The trial court erred in sentencing appellant to a mandatory minimum ten year sentence because the state failed to prove beyond a reasonable doubt that appellant possessed 100 times bulk amount [of] cathinone.
"[6]. A minimum mandatory ten year sentence for possession of khat violates the Eighth and Fourteenth Amendments to the United States Constitution as well as Article I, § 9 of the Ohio Constitution.
"[7]. The evidence was insufficient as a matter of law in that the state failed to prove that the quantity of cathinone allegedly possessed by appellant had a stimulant effect. Additionally, the conviction was against the manifest weight of the evidence."
Samatar, 152 Ohio App.3d, at ¶ 4-10.
 {¶ 11} In affirming the trial court's decision, this court on March 31, 2003, rejected appellant's various arguments regarding the motion for new trial. Furthermore, this court rejected appellant's claim that his trial counsel had been ineffective.
 {¶ 12} Appellant had argued that defense counsel had been ineffective in failing to interview Kiddon before trial, in failing to present substantive evidence on the organic make-up of khat via an expert witness, and in failing to request a continuance after Kiddon's "no cathine" testimony. This court concluded as follows:
Defendant first asserts that because defense counsel had Kiddon's report 12 days prior to trial, he should have called Kiddon before trial and questioned him about the report. Reasonable trial tactics can explain defense counsel's failure to interview the state's expert witness before trial. Pretrial questioning of Kiddon could have alerted him to particular lines of inquiry, thereby allowing Kiddon to prepare further and/or rob defense counsel's cross-examination of some of its force. In addition, defense counsel has admitted familiarity with the organic makeup of khat and, under the circumstances, could have reasonably anticipated that he would be fully prepared to handle all conceivable eventualities in Kiddon's testimony. Although defense counsel has asserted in his affidavit that he was" totally surprised" by Kiddon's testimony, nothing in that affidavit precludes the notion that defense counsel may have had reasonable grounds for not interviewing Kiddon before trial. Indeed, defense counsel does not admit that he should have interviewed Kiddon prior to trial. Even if hindsight suggests that defense counsel should have interviewed Kiddon, we have already noted that such hindsight is inappropriate underStrickland Moreover, defense counsel thoroughly cross-examined Kiddon at trial on his" no cathine" finding.
Defendant next asserts that defense counsel was ineffective in failing to seek a continuance after Kiddon's" no cathine" testimony and call an expert witness such as Dr. Kell. Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if a better strategy had been available. See State v. Phillips (1995),74 Ohio St.3d 72, 85, 656 N.E.2d 643. The decision whether to call a witness is generally a matter of trial strategy and, absent a showing of prejudice, does not deprive a defendant of effective assistance of counsel. State v. Williams (1991),74 Ohio App.3d 686, 694, 600 N.E.2d 298. Further, the failure to call an expert and instead rely on cross-examination does not constitute ineffective assistance of counsel. State v. Hartman (2001),93 Ohio St.3d 274, 299, 754 N.E.2s 1150. IN fact, in many criminal cases trial counsel's decision not to seek expert testimony "is unquestionably tactical because such an expert might uncover evidence that further inculpates the defendant." State v.Glover, Clermont App. No. CA2001-12-102, 2002-Ohio-6392, 2002 WL 31647905, at ¶ 95. "Further, even if the wisdom of such an approach is debatable, `debatable trial tactics' do not constitute ineffective assistance of counsel." Id., quotingState v. Clayton (1980), 62 Ohio St.2d 45, 49, 16 O.O.3d 35,402 N.E.2d 1189.
As we have already mentioned, defense counsel effectively cross-examined Kiddon at trial. Further, Dr. Kell's affidavit was before the trial court on defendant's motion for new trial. Accordingly, the trial court was aware of what Dr. Kell would have testified to at trial. Even after review of Dr. Kell's affidavit testimony, the trial court continued to find Kiddon's testimony credible.
Because it appears that defendant cannot establish that trial counsel's decision not to interview Kiddon before trial or to seek a continuance for the purpose of calling an expert witness was anything more than sound trial strategy, the issue of whether trial counsel's decision prejudiced defendant's defense need not be considered. See State v. Madrigal (2000), 87 Ohio St.3d 378,389, 721 N.E.2d 52 ("A defendant's failure to satisfy one prong of the Strickland [v. Washington (1984), 466 U.S. 6668,104 S.Ct. 2052] test negates a court's need to consider the other."). We thus reject defendant's claims of ineffective assistance of trial counsel. Accordingly, defendant's second assignment of error is not well taken.[1]
Id. at ¶ 90, 91, and 92.
 {¶ 13} While appellant's appeal was pending before this court, appellant filed a petition for post-conviction relief on October 8, 2002, raising six claims, asserting that his trial counsel had been ineffective and one claim alleging that he was denied due process and equal protection and/or had suffered cruel and unusual punishment. Specifically, appellant asserted the following: (1) ineffectiveness in failing to investigate the state chemist's lack of a cathine finding; (2) ineffectiveness in failing to consult with and present an expert concerning the chemical makeup of khat; (3) ineffectiveness in failing to request a mid-trial continuance to deal with the "no cathine" finding; (4) ineffectiveness in failing to move for the exclusion of the state chemist's testimony on the grounds of lack of reliability; (5) ineffectiveness in failing to argue anEighth Amendment violation because the sentence was grossly disproportionate to the crime and to other state, federal, and county sentences; (6) ineffectiveness in failing to introduce evidence that appellant was staying at his sister-in-law's residence at 684 E. Morrill Ave., Apartment B; and (7) that the grossly disproportionate sentence constituted cruel and unusual punishment and violated due process and equal protection.
 {¶ 14} On September 30, 2002, the trial court issued its decision and entry denying the petition. The trial court concluded that appellant's claims, one through four were barred by res judicata because those claims had been raised in appellant's prior appeal to this court. The trial court also found that, under Evid.R. 702, the threshold for determining the admissibility of Kiddon's testimony was met. As such, the trial court concluded that trial counsel had not been ineffective in failing to request a hearing on admissibility. With regard to defendant's fifth and seventh claims, the trial court concluded that the mandatory sentence of ten years for possessing over 100 times the bulk amount was not disproportionate to the offense and concluded that the mandatory sentence did not violate theEighth Amendment and that counsel could not have been ineffective in failing to raise those issues.
 {¶ 15} Lastly, in rejecting appellant's sixth claim, the trial court concluded that counsel had not been ineffective by failing to present appellant's testimony that he had been staying at 684 E. Morrill. The trial court noted that such evidence could have suggested more than a simple coincidence as well as tying appellant more closely to the contraband The trial court further noted that the evidence would not have altered the outcome of the bench trial since that additional fact did not raise a reasonable doubt in the trial court's mind. As such, the trial court found that appellant's petition failed to set forth substantive grounds for relief and dismissed it without a hearing.
 {¶ 16} In his appeal from the trial court's dismissal of his petition of post-conviction relief, defendant now asserts the following three assignments of error for our review:
ASSIGNMENT OF ERROR NO. 1:
1. Whether when a post-conviction petition is supported by sufficient evidentiary support to establish the claims and no documentary support is offered in opposition to the claims, a trial court errs in failing to grant petition[er] an evidentiary hearing.
ASSIGNMENT OF ERROR NO. 2:
2. Whether when petitioner's claims are supported by evidence that was not a part of the direct appeal, the doctrine of res judiciata [sic] can be properly applied to defeat the petition.
ASSIGNMENT OF ERROR NO. 3:
3. Whether a trial court abuses its discretion when it denies specific narrow requests for discovery after Petitioner has established sufficient support for his post-conviction claims to defeat a motion for summary judgment.
 {¶ 17} In State v. Cambell, Franklin App. No. 03AP-147, 2003-Ohio-6305, this court comprehensively discussed the general rules regarding post-conviction proceedings as follows:
The post-conviction relief process is a collateral civil attack on a criminal judgment, not an appeal of the judgment. State v.Steffen (1994), 70 Ohio St.3d 399, 410, 639 N.E.2d 67. "It is a means to reach constitutional issues which would otherwise be impossible to reach because the evidence supporting those issues is not contained" in the trial court record. * * * Post-conviction review is not a constitutional right but, rather, is a narrow remedy which affords a petitioner no rights beyond those granted by statute. * * * A post-conviction relief petition does not provide a petitioner a second opportunity to litigate his or her conviction. * * *
A defendant seeking to challenge a conviction or sentence through a petition for post-conviction relief under R.C. 2953.21
is not automatically entitled to a hearing. (Citations omitted.) In reviewing whether the trial court errs in denying a petitioner's motion for post-conviction relief without a hearing, the appellate court applies an abuse of discretion standard.
To warrant an evidentiary hearing on a petition for post-conviction relief a petitioner bears the initial burden of providing evidence that demonstrates a cognizable claim of constitutional error. (Citations omitted.) [A] trial court has a statutorily imposed duty to ensure a defendant presents evidence sufficient to warrant a hearing. The evidence must show "there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States." * * * Pursuant to R.C.2953.21(C), a defendant's petition for post-conviction relief may be denied by a trail court without holding an evidentiary hearing where the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that the petitioner set forth sufficient operative facts to establish substantive grounds for relief. * * *
A trial court may also dismiss a petition for post-conviction relief without holding an evidentiary hearing when the claims raised in the petition are barred by the doctrine of res judicata. * * * "Res judicata is applicable in all postconviction relief proceedings." * * * Under the doctrine of res judicata, a defendant who was represented by counsel is barred from raising an issue in a petition for post-conviction relief if defendant raised or could have raised the issue at trial or on direct appeal. * * *
For a defendant to avoid dismissal of the petition by operation of res judicata, the evidence supporting the claims in the petition must be competent, relevant, and material evidence outside the trial court record, and it must not be evidence that existed or was available for use at the time of trial. (Citations omitted.)
Id. at paragraphs 13-17.
 {¶ 18} In his first two assignments of error before this court, appellant asserts that he provided sufficient evidence with his petition for post-conviction relief to support his claims that trial counsel had been ineffective in the manner in which counsel handled Kiddon's testimony regarding the "no cathine" finding and counsel's failure to submit expert testimony contradicting Kiddon. Previously in his motion for a new trial, appellant submitted the affidavit of Dr. Kell in support of his theory that Kiddon's testimony was not credible and that counsel was ineffective for not presenting such evidence at trial. As found by the trial court, in its entry denying post-conviction relief, appellant raised these issues in his motion for new trial and they were rejected. Furthermore, on appeal before this court, these issues were raised and thoroughly addressed.
 {¶ 19} Pursuant to the doctrine of res judicata, a defendant who was represented by counsel is barred from raising issues in a petition for post-conviction relief if the appellant raised or could have raised the issue at trial or on direct appeal. Statev. Szefcyk (1996), 77 Ohio St.3d 93. The fact that appellant now attaches additional evidence in support of his claims does not make the doctrine of res judicata inapplicable. Appellant cannot simply continue submitting additional evidence in support of his arguments on multiple occasions. As such, this court finds that the doctrine of res judicata does apply to appellant's first and second assignments of error and those assignments of error are hereby overruled.
 {¶ 20} In his third assignment of error, appellant argues that the trial court abused its discretion by denying him discovery following his conviction in support of his petition for post-conviction relief. Appellant argues that since R.C. 2953.21
requires a post-conviction petitioner to file a petition setting forth grounds for relief supported by evidence outside the record, petitioners, such as appellant, should be granted discovery.
 {¶ 21} Appellant concedes that Ohio courts have clearly found that the decision to permit discovery is a matter fully within the discretion of the trial court and acknowledges that, inState v. Gulertekin (June 8, 2000), Franklin App. No. 99AP-900, this court held that a post-conviction relief petitioner is not entitled to discovery to help him/her establish substantive grounds for relief.
 {¶ 22} As stated previously, the post-conviction relief process is a collateral attack on a criminal judgment. It is not a constitutional right but, rather, is a narrow remedy which affords a petitioner no rights beyond those granted by statute. Furthermore, a petition for post-conviction relief does not provide a petitioner a second opportunity to litigate his conviction. Furthermore, in State v. Steffen (1994),70 Ohio St.3d 399, the Supreme Court of Ohio stated as follows:
* * * [P]ostconviction state collateral review itself is not a constitutional right, even in capital cases. Murray v.Giarratano (1989), 492 U.S. 1, 109 S.Ct. 2765, 106 L.Ed.2d 1;Pennsylvania v. Finley (1987), 481 U.S. 551, 107 S.Ct. 1990,95 L.Ed.2d 539. * * *
 {¶ 23} There is no requirement of civil discovery in post-conviction proceedings. See Love v. Cuyahoga Cty.Prosecutor's Office (1991), 87 Ohio St.3d 158. Furthermore, appellant claims that discovery can be allowed if a hearing is ordered. In the present case, the trial court dismissed the petition without a hearing and this court has found that that did not constitute an abuse of discretion. For the foregoing reasons, appellant's third assignment of error is not well taken and is overruled.
 {¶ 24} Based on the foregoing, this court overrules appellant's first and second assignments of error on the basis that res judicata applies. Appellant's third assignment of error is overruled on the basis that the trial court did not abuse its discretion in refusing to order discovery. Therefore, the judgment of the Franklin County Court of Common Pleas dismissing his petition for post-conviction relief is hereby affirmed.
Judgment affirmed.
Bowman and Watson, JJ., concur.
[1] Thereafter, the Supreme Court of Ohio declined jurisdiction over appellant's appeal. State v. Samatar, Franklin App. No. 02AP180, 2003-Ohio-1639.