OPINION
{¶ 1} Defendant-appellant, Kevin A. Tolliver, appeals from the judgment of the Franklin County Court of Common Pleas denying his petition for post-conviction relief.
 {¶ 2} The Franklin County Grand Jury indicted appellant on murder with a firearm specification, in violation of R.C. 2903.02 and 2941.145, respectively, and tampering with evidence, in violation of R.C. 2921.12. The charges stem from Claire Schneider's death on December 29, 2001.
 {¶ 3} On December 29, 2001, appellant talked to law enforcement about Schneider's death, stating "[s]he didn't mean it. * * * She was in the middle of a sentence when she accidentally shot herself. I feel it's my fault, because she didn't know the gun was loaded." (Videotape Tr. 15-16.) Appellant also left a note in Schneider's apartment, stating "[s]he did not know gun was loaded." (Tr. Vol. II, 308.) However, while in jail awaiting trial, appellant told inmate Joseph Adams that he killed Schneider with a nine-millimeter gun.
 {¶ 4} A jury trial commenced, and the trial court dismissed the tampering with evidence charge after opening statements. Plaintiff-appellee, the State of Ohio, proceeded with the murder charge and firearm specification.
 {¶ 5} Columbus Police ballistics expert Mark Hardy and Franklin County Deputy Coroner Dr. Keith Norton testified that Schneider was shot in the mouth from a gun held and fired outside her mouth. Dr. Norton did not determine the motive behind Schneider's death, but did indicate that he has never examined a case that involved a person committing suicide by holding a gun outside the mouth and firing into the mouth.
 {¶ 6} The state introduced into evidence a white shirt with bloodstains that Schneider's family found in her apartment. The state asserted that appellant wore the shirt when he shot Schneider. Neither law enforcement nor appellant's trial counsel tested the shirt for gunshot residue. Bloodstain expert Robert Young examined the shirt on the state's behalf and testified that "the white shirt was in close proximity to Miss Schneider's face at the instant she was shot." (Tr. Vol. VII, 1069.) On cross-examination, Young indicated that "the white shirt could have been laying on the floor" during the shooting. (Tr. Vol. VII, 1168.)
 {¶ 7} Appellant's trial counsel called bloodstain expert Stewart James to testify about the white shirt. James opined that nothing in the evidence indicates "whether or not that shirt was being worn at the time the shot was fired." (Tr. Vol. XI, 1645.)
 {¶ 8} Pharmacist Wendy Arnold and Dr. Stanley McCloy, Jr., testified on the state's behalf. Dr. McCloy testified that he prescribed Paxil for Schneider after diagnosing her with depression. Arnold testified that Schneider filled her last Paxil prescription for 30 tablets on November 24, 2001. According to Arnold, four days would have passed between the day the prescription ran out and December 29, 2001, the day Schneider died. Appellant similarly told law enforcement that Schneider "had not taken her medication." (Videotape Tr., 16.) McCloy stated that "[i]n less than a minority of cases," a patient failing to take prescribed Paxil medication for a few days "could experience a bit of withdrawal." (Tr. Vol. VIII, 1126.)
 {¶ 9} During the trial, the state referred to a coat that law enforcement found on Schneider. The state asserted that Schneider wore the coat while attempting to flee from appellant. Neither law enforcement nor appellant's trial counsel tested the coat for gunshot residue.
 {¶ 10} Appellant's trial counsel contended throughout the trial that Schneider accidentally shot herself. During closing argument, defense counsel emphasized that Schneider did not know that the firearm was loaded and that she shot herself during the middle of her sentence.
 {¶ 11} After deliberations, the jury found appellant guilty of murder and the firearm specification. The trial court sentenced appellant to consecutive prison terms of three years on the firearm specification and 15 years to life on the murder conviction.
 {¶ 12} Appellant appealed his conviction, which we affirmed in Statev. Tolliver, Franklin App. No. 02AP-811, 2004-Ohio-1603. The Ohio Supreme Court declined review in State v. Tolliver, 103 Ohio St.3d 1407,2004-Ohio-3980.
 {¶ 13} Meanwhile, appellant filed before the trial court a petition for postconviction relief and requested an evidentiary hearing on the matter. In seeking postconviction relief, appellant claimed that his incarceration is unlawful under the Eighth Amendment to the United States Constitution because of his "actual innocence." (Appellant's brief, 1.) Appellant also asserted that his trial counsel's performance constituted ineffective assistance because trial counsel failed to: (1) test for gunshot residue the coat that law enforcement found on Schneider after her death and the white shirt that Schneider's family found in the apartment, (2) elicit evidence from Schneider's family regarding Schneider's emotional state before her death, and (3) assert a defense that Schneider committed suicide due to her suffering "Paxil withdrawal syndrome." (Appellant's brief, 2.) In making these claims, appellant asked the trial court to order gunshot residue testing on the coat and shirt and to fund a psychiatrist to aid his "Paxil withdrawal syndrome" defense.
 {¶ 14} In support of the "Paxil withdrawal syndrome" claim, appellant submitted documents that reference patients becoming suicidal after discontinuing Paxil or related medications. Appellant also provided copies of sworn testimony that Drs. Healy, Shipko and Glenmullen gave in a civil products liability suit against Paxil, that challenged Paxil advertisements and warning labels. Dr. Healy stated that ten percent of Paxil users have severe withdrawal symptoms that "can" or "may" lead to suicide. (R. 370, Dr. Healy testimony, ¶¶ 16, 24.) Dr. Shipko described symptoms of Paxil withdrawal, but did not mention suicide. Dr. Glenmullen said that "[s]ome patients in acute withdrawal have impulsive, aggressive, or suicidal urges." (R. 370, Dr. Glenmullen testimony, ¶ 24.)
 {¶ 15} Appellant also submitted correspondence from Drs. Healy and Shipko. Appellant asked the doctors to comment on whether Schneider committed suicide because of Paxil withdrawal. Dr. Healy indicated that "[t]he brief outline of your case makes it look stronger than many others in this area. However, I am particularly bogged down just at the moment." (R. 371, Dr. Healy correspondence.) Dr. Healy then referred appellant to another expert. Dr. Shipko stated, "[b]ased on the information available it seems that there is ample information to suggest that Paxil was the problem * * *. Usually I review all of the available records before I indicate whether or not I would be willing to render an opinion." (R. 371, Dr. Shipko correspondence.)
 {¶ 16} Furthermore, appellant presented a pre-marketing study on Paxil and related medications. The study indicates that there is "no signal * * * that [Paxil and related medications] exposes [sic] a subset of depressed patients to additional risk for suicide." (R. 370, Review and Evaluation of Clinical Data, 25.)
 {¶ 17} The trial court denied the post-conviction petition without an evidentiary hearing. The trial court concluded that res judicata bars appellant's claims of "actual innocence" and ineffective assistance pertaining to trial counsel's failure to: (1) test for gunshot residue the coat and white shirt, and (2) elicit evidence from Schneider's family regarding Schneider's emotional state before her death. The trial court also concluded that appellant presented insufficient documentation to support his claim that trial counsel was ineffective by failing to present the "Paxil withdrawal syndrome" defense.
 {¶ 18} Appellant appeals, raising two assignments of error:
I. The trial court erred in not holding an evidentiary hearing pursuant to R.C. 2953.21(E); and 2953.22.
II. The trial court erred in finding the claims of ineffective assistance of trial counsel was barred by doctrine of res judicata. [sic] when such evidence that counsel failed to investigate dehoured the trial record in its entirety.
 {¶ 19} We address appellant's two assignments of error together because they concern similar issues. In his assignments of error, appellant contends that the trial court erred by denying his petition for post-conviction relief without holding an evidentiary hearing.
 {¶ 20} A post-conviction petition is a collateral civil challenge to a criminal conviction or sentence. State v. Calhoun (1999),86 Ohio St.3d 279, 281. "`It is a means to reach constitutional issues which would otherwise be impossible * * * because the evidence supporting those issues is not contained' in the trial court record." State v.Campbell, Franklin App. No. 03AP-147, 2003-Ohio-6305, ¶ 13.
 {¶ 21} A petitioner seeking post-conviction relief is not automatically entitled to an evidentiary hearing. Calhoun, at 282. The trial court "shall determine whether there are substantive grounds for relief" before granting a hearing on a post-conviction petition. R.C.2953.21(C). Pursuant to R.C. 2953.21(C), a trial court properly denies a postconviction petition without an evidentiary hearing if the petition, supporting documents and court record "do not demonstrate that the petitioner set forth sufficient operative facts to establish grounds for relief." Calhoun, at 291.
 {¶ 22} We apply an abuse of discretion standard when reviewing a trial court's decision to deny a post-conviction petition without a hearing.Campbell, at ¶ 14, citing Calhoun, at 284. An abuse of discretion connotes more than an error of law or judgment; it entails a decision that is unreasonable, arbitrary or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 23} Appellant contends that he set forth sufficient operative facts to support his ineffective assistance of counsel claims, thereby warranting an evidentiary hearing. We disagree.
 {¶ 24} The United States Supreme Court established a two-prong test for ineffective assistance of counsel. Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052. First, the defendant must show that counsel's performance was outside the range of professionally competent assistance and, therefore, deficient. Id. at 687. Second, the defendant must show that counsel's deficient performance prejudiced the defense and deprived the defendant of a fair trial. Id. Moreover, a defendant must overcome a strong presumption that the challenged action constitutes trial strategy. State v. Carter (1995), 72 Ohio St.3d 545, 558.
 {¶ 25} In his post-conviction petition, appellant contended that his trial counsel was ineffective by failing to claim that Schneider committed suicide from "Paxil withdrawal syndrome." In raising this contention, appellant requested that the trial court fund a psychiatrist for assistance. However, neither the post-conviction statute nor the constitution warrants funding for such expert assistance in a post-conviction petition. See State v. Hooks (Oct. 30, 1998), Montgomery App. No. CA 16978; State v. Smith (Mar. 15, 2000), Lorain App. No. 98CA007169. Moreover, appellant is not entitled to discovery to help him establish substantive grounds for relief during the initial stage of a post-conviction proceeding. See State v. Gulertekin (June 8, 2000), Franklin App. No. 99AP-900; State v. Samatar, Franklin App. No. 03AP-1057, 2004-Ohio-2641, at ¶ 21. Thus, appellant's request for expert assistance does not overcome his burden to provide sufficient operative facts demonstrating substantive grounds for relief, as required in R.C.2953.21(C).
 {¶ 26} Likewise, appellant presented no medical expert opinion or analysis specifically linking Schneider's death to suicide triggered by "Paxil withdrawal syndrome." Such evidence is necessary because "whether, and to what extent, Paxil causes discontinuation symptoms varies from patient to patient." In re Paxil Litigation (C.D.Cal., 2003), 212 F.R.D. 539, 551.
 {¶ 27} Testimony from Drs. Healy, Shipko and Glenmullen do not link Schneider's death to suicide from Paxil withdrawal. Although the doctors discuss "Paxil withdrawal syndrome," their testimony pertains to a civil products liability case, not a murder trial. Moreover, the doctors did not quantify the instances that Paxil withdrawal actually leads to suicide. Indeed, Dr. Shipko did not even mention suicide as a withdrawal symptom, and Dr. Healy stated that severe withdrawal "can" or "may" lead to suicidal tendencies. (R. 370, Dr. Healy testimony, ¶¶ 16, 24.)
 {¶ 28} Nor do the correspondences from Drs. Healy and Shipko link Schneider's death to suicide from "Paxil withdrawal syndrome." Dr. Healy made no definitive conclusion about Schneider's death because he was "particularly bogged down just at the moment." (R. 371, Dr. Healy correspondence.) Similarly, Dr. Shipko was unwilling to opine about Schneider's death because he first wanted to "review all of the available records." (R. 371, Dr. Shipko correspondence.) In addition, the experts' tentative statements are unreliable because appellant only provided them with information that assumed Schneider killed herself, with no mention of evidence suggesting murder.
 {¶ 29} Moreover, appellant presented documentation that actually refutes his "Paxil withdrawal syndrome" claim. The pre-marketing study indicates "no signal" suggesting that "[Paxil and related medications] exposes [sic] a subset of depressed patients to additional risk for suicide." (R. 370, Review and Evaluation of Clinical Data, 25.)
 {¶ 30} Lastly, the evidence from trial contradicts appellant's claim that Schneider committed suicide. Appellant told law enforcement, "[s]he didn't mean it. * * * She was in the middle of a sentence when she accidentally shot herself. I feel it's my fault, because she didn't know the gun was loaded." (Videotape Tr. 15-16.) Similarly, appellant left a note in Schneider's apartment, stating "[s]he did not know gun was loaded." (Tr. Vol. II, 308.) In addition, Dr. Norton suggested that he has never examined a case that involved someone committing suicide by firing a gun from outside the mouth into the mouth. Furthermore, appellant eventually confessed to inmate Adams that he killed Schneider.
 {¶ 31} Therefore, the trial court record, post-conviction petition and supporting documents do not establish that Schneider committed suicide from "Paxil withdrawal syndrome." Thus, appellant failed to set forth sufficient operative facts to support his claim that trial counsel provided ineffective assistance by not presenting the "Paxil withdrawal syndrome" defense.
 {¶ 32} Appellant further contended in his post-conviction petition that trial counsel was ineffective in failing to test for gunshot residue a white shirt that Schneider's family found in her apartment. According to appellant, gunshot residue testing would refute the state's claim that he wore the shirt during the shooting.
 {¶ 33} However, appellant submitted no documents to verify his assertion and essentially raised a conclusory allegation. Broad assertions and conclusory allegations do not warrant a hearing "without a further demonstration of prejudice." State v. Jackson (1980),64 Ohio St.2d 107, 111; State v. Walker, Franklin App. No. 04AP-179, 2005-Ohio-461, ¶ 8. Although appellant sought court-ordered gunshot residue testing on the shirt, he is not entitled to such an order. SeeHooks; Smith; Gulertekin; Samatar. Thus, appellant's request for gunshot residue testing does not overcome his burden to provide sufficient operative facts demonstrating substantive grounds for relief, as required in R.C. 2953.21(C).
 {¶ 34} Furthermore, appellant's trial counsel utilized a bloodstain expert, Stewart James, to counter the state's argument about the shirt and elicited a concession from the state's bloodstain expert, Robert Young, who stated that "the white shirt could have been laying on the floor" during the incident. (Tr. Vol. VIII, 1168.) Thus, trial counsel implemented sound trial strategy when challenging the state's assertions about the white shirt and was not ineffective in failing to have the shirt tested for gunshot residue. See Carter, at 558.
 {¶ 35} Similarly, appellant alleged in his petition that trial counsel was ineffective by failing to test for gunshot residue a coat that the state claims Schneider wore while attempting to flee from appellant. According to appellant, such testing would support his contention that he placed the coat under Schneider after she shot herself. Appellant sought court-ordered gunshot residue testing on the coat, but presented no documents to verify his claim. As above, appellant is not entitled to gunshot residue testing, and his conclusory allegations do not warrant a hearing. Hooks; Smith; Gulertekin; Samatar; Jackson, at 111; Walker, at ¶ 8. In addition, the state's argument that Schneider wore the coat while attempting to flee from appellant was a minor point, and trial counsel's decision to focus on more important aspects of the trial does not signify deficient performance. Strickland, at 687.
 {¶ 36} Lastly, appellant contended that trial counsel was ineffective by failing to elicit evidence from Schneider's family regarding her emotional state before her death. However, trial counsel made a sound strategic decision not to elicit information from Schneider's family given the likelihood that they would be hostile to appellant's defense. See Carter, at 558. Furthermore, appellant provided no documentation to verify what Schneider's family actually recalls about Schneider's emotional state, and instead relies on insufficient conclusory allegations. See Jackson, at 111; Walker, at ¶ 8.
 {¶ 37} Accordingly, appellant has failed to provide specific operative facts demonstrating substantive grounds for relief to support his ineffective assistance of counsel claims. Thus, pursuant to R.C.2953.21(C), the trial court did not abuse its discretion by denying the claims without an evidentiary hearing.
 {¶ 38} Next in his assignments of error, appellant argues that the trial court erred by applying res judicata. Again, we disagree.
 {¶ 39} A trial court may dismiss a petition for post-conviction relief without an evidentiary hearing when res judicata bars the claim.Campbell, at ¶ 16. Under the doctrine of res judicata, a defendant cannot raise an issue in a post-conviction petition if he or she could have raised the issue on direct appeal. State v. Szefcyk (1996),77 Ohio St.3d 93, 96. Thus, courts apply res judicata "if the petition for postconviction relief does not include any materials out of the original record to support the claim for relief." State v. Combs (1994),100 Ohio App.3d 90, 97. "For a defendant to avoid dismissal of the petition by operation of res judicata, the evidence supporting the claims in the petition must be competent, relevant, and material evidence outside the trial court record." Campbell, at ¶ 17, citing State v.Cole (1982), 2 Ohio St.3d 112, syllabus.
 {¶ 40} Generally, the introduction of evidence outside the record to support a post-conviction petition is sufficient "if not to mandate a hearing, at least to avoid dismissal" under res judicata principles.Cole, at 114. However, the Ohio Supreme Court has justified a trial court's application of res judicata when "the allegations outside the record upon which appellant relies appear so contrived, when measured against the overwhelming evidence in the record of trial counsel's competence, as to constitute no credible evidence." Id. Res judicata is justified in such instances because the evidence outside the record "can hardly be said to establish or support an issue or claim that could not have been raised upon direct appeal." Id. at 115.
 {¶ 41} Here, the trial court applied res judicata to deny appellant's ineffective assistance of counsel claims related to trial counsel's failure to: (1) test the coat and white shirt for gunshot residue, and (2) elicit evidence from Schneider's family regarding her emotional state before her death. We rejected these arguments above, noting appellant's insufficient conclusory allegations and referencing trial counsel's effective performance. Thus, Cole justifies the trial court's application of res judicata on these claims.
 {¶ 42} The trial court also applied res judicata to deny appellant's "actual innocence" claim without an evidentiary hearing. Appellant supported the claim by incorporating his ineffective assistance of counsel contentions and by citing evidence in the record, e.g., he was in the bathroom when Schneider shot herself.
 {¶ 43} Res judicata bars appellant's "actual innocence" claim because he relies on evidence in the trial court record and could have used such evidence to raise the claim on direct appeal. See Szefcyk, at 96; Combs,
at 97. In addition, we already rejected appellant's ineffective assistance of counsel claims, and do so here to the extent appellant relies on them to support the "actual innocence" claim. Accordingly, we conclude that the trial court did not abuse its discretion by denying appellant's "actual innocence" claim without an evidentiary hearing.
 {¶ 44} In summary, the trial court did not abuse its discretion by denying appellant's post-conviction petition without an evidentiary hearing. Accordingly, we overrule appellant's first and second assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
Lazarus and Sadler, JJ., concur.