OPINION
{¶ 1} Defendant-appellant, James T. Conway III, appeals from a judgment of the Franklin County Court of Common Pleas denying his petition for post-conviction relief brought pursuant to R.C.2953.21.
 {¶ 2} The grand jury indicted appellant on one court of aggravated murder with three death penalty specifications: (1) a specification under R.C. 2929.04(A)(7) because the murder occurred during the course of a kidnapping and appellant was either the principal offender or acted with prior calculation and design; (2) a specification under R.C. 2929.04(A)(3) because the murder was committed to escape apprehension for another offense; and (3) a specification under R.C. 2929.04(A)(8) because the murder was committed to prevent a witness from presenting testimony in a criminal proceeding. Appellant was also indicted under one count of kidnapping, one count of possession of criminal tools, one count of abuse of a corpse, one count of obstruction of justice, and one count of tampering with evidence. All charges arose out of the murder of Andrew Dotson in September 2001.
 {¶ 3} The jury at appellant's trial returned guilty verdicts on all counts and specifications in the indictment. After the penalty phase testimony and deliberation, the jury recommended the death penalty. The trial court followed the jury's recommendation and sentenced appellant to death on the merged aggravated murder and kidnapping counts, as well as various prison sentences on the lesser counts of the indictment. The Supreme Court of Ohio affirmed appellant's conviction and sentence. State v. Conway, 109 Ohio St.3d 412, 2006-Ohio-2815.
 {¶ 4} On August 23, 2004, appellant initiated the present post-conviction proceedings with a petition which, after amendment, set forth 20 claims of constitutional violations that assertedly render his conviction void. The court held an evidentiary hearing on March 25, 2005 at which the defense presented the testimony of a single witness, Shawn Nightingale, who was present at and participated in the events leading up to the murder of Dotson. The trial court on May 2, 2005 entered a decision and judgment entry overruling all 20 claims in appellant's petition and denying post-conviction relief. Appellant has timely appealed and brings the following assignments of error:
ASSIGNMENT OF ERROR NO. I:
THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION FOR FUNDING TO RETAIN EXPERTS.
ASSIGNMENT OF ERROR NO. II:
THE TRIAL COURT ERRED WHEN IT PRECLUDED PETITIONER FROM CONDUCTING DISCOVERY.
ASSIGNMENT OF ERROR NO. III:
THE TRIAL COURT ERRED BY APPLYING THE DOCTRINE OF RES JUDICATA TO PRECLUDE REVIEW OF CERTAIN OF PETITIONER'S CAUSES OF ACTION.
ASSIGNMENT OF ERROR NO. IV:
THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT APPELLANT RELIEF.
ASSIGNMENT OF ERROR NO. V:
THIS COURT ERRED WHEN IT REFUSED TO APPOINT TWO ATTORNEYS FOR THIS APPEAL.
 {¶ 5} A petition for post-conviction relief in Ohio is a statutorily created procedure designed to provide an avenue to correct a violation of a defendant's constitutional rights in his criminal trial. The remedy is defined under R.C. 2953.21:
(A)(1)(a) Any person who has been convicted of a criminal offense or adjudicated a delinquent child and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States, * * * may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief.
* * *
(3) In a petition filed under division (A) of this section, a person who has been sentenced to death may ask the court to render void or voidable the judgment with respect to the conviction of aggravated murder or the specification of an aggravating circumstance or the sentence of death.
* * *
Before granting a hearing on a petition filed under division (A) of this section, the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition, the supporting affidavits, and the documentary evidence, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript. * * *
 {¶ 6} The post-conviction relief process is a civil collateral attack on a criminal judgment, not an appeal of that judgment. State v. Calhoun (1999), 86 Ohio St.3d 279, 281,714 N.E. 2d 905, 908. It is a means by which the petitioner may allow the court to reach constitutional issues that would otherwise be impossible to review because the evidence supporting those issues is not contained in the record of the petitioner's criminal conviction. State v. Murphy (Dec. 26, 2000), Franklin App. No. 00AP-233. The petition for post-conviction relief is thus not intended to provide a defendant with a second opportunity to litigate his conviction, nor is the petitioner automatically entitled to an evidentiary hearing on the petition. State v.Jackson (1980), 64 Ohio St.2d 107, 413 N.E.2d 819.
 {¶ 7} In order for the trial court to grant a hearing the petitioner must provide evidence that demonstrates a cognizable claim of constitutional error, R.C. 2953.21(C), and such evidence must demonstrate that the denial or infringement of the petitioner's constitutional rights render the petitioner's conviction or sentence void. State v. Perry (1967),10 Ohio St.2d 175, 226 N.E.2d 175, paragraph four of the syllabus. If such evidentiary materials are not submitted, the trial court may deny the petition without a hearing. Murphy, citing Jackson,
supra, at 110.
 {¶ 8} The most significant restriction on Ohio's statutory procedure for post-conviction relief is that the doctrine of res judicata requires that the claims presented in the petition represent error supported by evidence outside of the record generated by the direct criminal proceedings. "Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from the judgment, any defense or claimed lack of due process that was raised or could have been raised by the defendant at the trial that resulted in that judgment or that conviction, or on an appeal from the judgment." State v. Cole (1982), 2 Ohio St.3d 112,443 N.E.2d 169, quoting Perry, supra, at paragraph nine of the syllabus. "Res judicata also implicitly bars a petitioner from `repackaging' evidence or issues which either were, or could have been, raised in the context of the petitioner's trial or direct appeal." State v. Hessler, Franklin App. No. 01AP-1011, 2002-Ohio-3321, at ¶ 27.
 {¶ 9} The facts of this case were extensively developed in the Supreme Court of Ohio's decision on direct appeal, and will be reproduced here only as necessary to decide the issues raised in this appeal from a denial of post-conviction relief. As a brief background to issues that may be developed more extensively below, the state in appellant's criminal trial relied principally on the testimony of an admitted co-participant in the kidnapping and murder of Andrew Dotson, Mike Arthurs, a friend of appellant. The state also presented the testimony of a jailhouse informant, Ronald Trent, and the testimony of Dr. Patrick Fardal, the Chief Forensic Pathologist for the Franklin County Coroner's Office.
 {¶ 10} Arthurs testified that in September, 2001, appellant approached Arthurs and Shawn Nightingale, and asked if they would kill Andrew Dotson because Dotson was a witness to a previous incident in which appellant had shot and wounded another man. Arthurs and Nightingale agreed to do so, Arthurs testified, and on a manufactured pretext convinced Dotson to go to West Virginia, where they intended to kill him. They selected a rural wooded area to carry out the crime, but then got cold feet and did not carry through their scheme. The three drove back to Columbus, with Dotson taking some pills on the way and eventually passing out. On the drive home, Arthurs testified, he called appellant to state that they had been unable to kill Dotson.
 {¶ 11} Appellant met Arthurs, Nightingale, and the still-unconscious Dotson at a shopping center and they all drove to a rural cornfield. Appellant then ordered Arthurs to take Dotson out of the car and choke him. Arthurs testified that he pretended to strangle the unconscious Dotson by stepping on his throat, but that when he stopped doing so Dotson was still breathing. Arthurs and another man then dragged Dotson some distance into the cornfield, whereupon appellant took a pickax from the back of a vehicle and approached Dotson's inanimate body. Arthurs heard two dull thuds. Appellant then walked out of the cornfield and wiped blood off the pickax by sticking it in the ground. Appellant later told Arthurs that he had struck Dotson twice with the pickax in the chest and belly.
 {¶ 12} Ronald Trent, who shared a day room with appellant in the Franklin County jail, testified that after they had been in jail together for several weeks, appellant began describing the circumstances of the case and stated that he had killed Dotson because he was afraid that Dotson would tell the authorities about witnessing appellant shoot another man in a separate incident. Appellant then developed his exposition of the murder to Trent by describing the involvement of Shawn Nightingale and Mike Arthurs. These alleged statements by appellant substantially corroborated Arthurs' account of the murder but minimized appellant's participation in the actual killing. Trent was later given a wire in order to record his further conversations with appellant. In these later conversations appellant continued to assert that Dotson was dead after Arthurs strangled him by standing on his neck, but that appellant had nonetheless hit Dotson twice in the chest with a pickax to be sure that Dotson was dead.
 {¶ 13} Dr. Fardal testified that he performed the autopsy on Dotson's body and that Dotson had died as a result of two stab wounds piercing his lungs, heart and liver. The stab wounds corresponded to a round instrument three-quarters of an inch in diameter and had penetrated six inches into the body. The amount of fluids in the chest indicated that Dotson was still breathing when he was stabbed. Dr. Fardal saw no evidence of injury to Dotson's head or neck to suggest that his death was caused by choking. The wounds were compatible with the description of the pickax provided by witnesses.
 {¶ 14} Appellant's first assignment of error asserts that the trial court erred in failing to appoint and fund expert witnesses to provide testimony on behalf of appellant in support of his petition for post-conviction relief. The requested experts included an expert on international law to demonstrate that appellant's convictions and death sentence violated "customary international law as guaranteed by the Universal Declaration of Human Rights, the International Covenant on Civil and Political Rights, and the American Declaration on the Rights and Duties of Man." Another expert would have testified on the conduct of Attorney Christopher Cicero, who initially represented appellant prior to trial, and the ethical ramifications of an alleged conflict regarding Cicero's representation of appellant. Expert testimony funding was also sought regarding the standard of performance of appellant's trial counsel and whether that counsel's performance fell before prevailing standards of representation. Appellant also sought appointment of a forensic entomologist, a forensic pathologist, and a "cultural expert" to describe for mitigation purposes the family background, personal history and cultural experiences of a defendant to further the jury's understanding of appellant's conduct and its causes. The trial court denied funding as to all experts.
 {¶ 15} Because there is no federal constitutional right to a post-conviction review process, Ohio's post-conviction proceedings afford only a narrow remedy strictly defined by statute and granting no rights to a petitioner beyond those spelled out in R.C. 2953.21. State v. Campbell, Franklin App. No. 03AP-147, 2003-Ohio-6305, at ¶ 13. While the statute explicitly provides for appointment of counsel in post-conviction proceedings when the petitioner has been sentenced to death, the statute nowhere provides a right to funding or appointment of expert witnesses or assistance in a post-conviction petition.State v. Tolliver, Franklin App. No. 04AP-591, 2005-Ohio-989, at ¶ 25, citing State v. Smith (2000), Ninth Dist. App. 98CA-007169, and State v. Hooks (1998), Second Dist. App. No. CA 16978. We accordingly find no error on the part of the trial court in denying the requested appointment and funds for expert witnesses in support of the petition for post-conviction relief, and appellant's first assignment of error is overruled.
 {¶ 16} Appellant's second assignment of error asserts that the trial court erred when it denied appellant's civil discovery request prior to the post-conviction petition hearing. Appellant had sought wide-ranging discovery of prosecution and police files related to appellant's crime as well as numerous other persons and incidents.
 {¶ 17} The Supreme Court of Ohio has stated that "there is no requirement of civil discovery in post-conviction proceedings."State ex rel. Love v. Cuyahoga Cty. Prosecutor's Office (1999),87 Ohio St.3d 158, 159. In keeping with Love, this court has specifically stated that a "post-conviction relief petitioner is not entitled to discovery to help him or her establish substantive grounds for relief." State v. Gulertekin (June 8, 2000), Franklin App. No. 99AP-900. See, also, State v.Williams, Franklin App. No. 05AP-339, 2006-Ohio-2197. Without further addressing the reasonableness and feasibility of appellant's wide-ranging discovery requests in this case, we find no error on the part of the trial court in denying the discovery request. Appellant's second assignment of error is accordingly overruled.
 {¶ 18} Appellant's third assignment of error asserts that the trial court erred in finding that certain of appellant's claims in his petition for post-conviction relief were barred by application of the doctrine of res judicata under the standards limiting post-conviction actions as set forth above in this opinion. We will address application of res judicata for each of the petition claims addressed in appellant's brief in this appeal.
 {¶ 19} Appellant's eleventh cause of action in his petition asserted that the criminal indictment in his case impermissibly set forth two different forms of aggravated murder in a single count. Any error asserted in this respect is entirely within the record and therefore could have been raised in appellant's direct appeal. Res judicata therefore bars these issues in this post-conviction action, both with respect to the underlying error and any failure of trial counsel to raise this as error at trial, since failure of trial counsel to raise the matter is also clearly ascertainable from the record.
 {¶ 20} Appellant's sixteenth cause of action in his petition asserts that "petitioner's convictions and sentences are void and/or voidable because the prosecutor failed to prove by proof beyond a reasonable [sic] petitioner's guilt as to one or more aggravating circumstances." This is essentially an assertion that appellant's conviction was against the manifest weight of the evidence or supported by insufficient evidence, which, absent further elaboration or refinement, does not of itself rise to the level of a constitutional violation; moreover, any error in this respect is necessarily limited to the record and entirely barred by res judicata.
 {¶ 21} Appellant's tenth cause of action asserts that the Franklin County Prosecutor's office made improper extra-judicial statements that deprived appellant of a fair trial. Most of these statements to the press involved appellant's alleged bad character, widespread criminal activity, and threats against members of the prosecutor's office. While these statements and press articles themselves are outside the record in this case, the question of whether appellant was prejudiced by pre-trial publicity, which was essentially the only prejudicial possibility raised by the alleged extra-judicial statements by the prosecution, have been addressed on appeal in this matter and was found without merit by the Supreme Court of Ohio. Conway,2006-Ohio-2815, at ¶ 32 through 40.
 {¶ 22} Appellant's fifth and sixth causes of action assert that various state and federal agencies failed to respond or comply with inquiries and request for information by counsel for appellant seeking documents and information to pursue the post-conviction petition. We initially note that this does not constitute a pre-conviction violation of appellant's constitutional rights, and as such does not form the basis for a proper cause of action in a post-conviction petition. If the allegations are taken as assertions of error on the part of the trial court, appellant does not articulate how the trial court, or even less this court, is in a position to grant effective relief. While, strictly speaking, these causes of action are not barred by res judicata, the trial court certainly did not err in finding that they lack merit.
 {¶ 23} In accordance with the foregoing, the trial court did not err in its application of res judicata to the above causes of action in appellant's petition, and appellant's third assignment of error is accordingly overruled.
 {¶ 24} We will next address, out of numerical order, appellant's fifth assignment of error, which asserts that this court erred when it appointed only one, rather than the requested two, attorneys for the present appeal. Since this is not an assertion of error on the part of the trial court, we must initially state that the assignment of error lacks merit on that basis. Moreover, if it is taken as a motion for reconsideration of this court's prior denial of appointment of co-counsel, we continue to find that a petition under R.C. 2953.21 brought by an individual sentenced to death only entitles the petitioner to appointment of a single counsel, rather than the two counsel mandated for direct appeal in a death penalty case. We have created a very limited exception only in cases involving a first-time claim of mental retardation precluding imposition of the death penalty under Atkins v. Virginia (2000),536 U.S. 304, 122 S.Ct. 2242. That exception is inapplicable here, and appellant is not entitled to more than one appointed attorney in this appeal.
 {¶ 25} We finally turn to appellant's fourth assignment of error, which generally asserts that the trial court erred in denying his petition. This brings us to address the merits of those of appellant's 20 causes of action raised in his petition that were not previously addressed in this decision.
 {¶ 26} Appellant's first cause of action alleges that his convictions and sentences are void or voidable because they are "in violation of International Law and Treaties to which the United States is a signatory." The state of international law at the time of trial (and the extent to which criminal proceedings in an Ohio court are subject to it) is essentially a question of ascertaining the governing law at the time of trial. By definition the law applying (or not applying) to appellant's case does not lie outside the record, and accordingly this issue could have been raised on direct appeal. This claim is, therefore, barred by application of the doctrine of res judicata.
 {¶ 27} Appellant's second cause of action asserts that Ohio's post-conviction procedures do not provide an adequate remedy for constitutional violations. "This court and other Ohio appellate courts have rejected [claims] that Ohio's post-conviction statute does not afford an adequate corrective process." State v.Hessler, Franklin App. No. 01AP-1011, 2002-Ohio-3321, at ¶ 73. The present case gives us no reason to revisit that conclusion.
 {¶ 28} Appellant's fourth cause of action asserts that the transcript in his appeal from his conviction was incomplete or inaccurate. This is not a constitutional violation occurring prior to conviction and thus not properly the subject of a post-conviction petition. In addition, the adequacy of the record in an appeal in a death penalty case taken directly to the Supreme Court of Ohio involves the propriety of proceedings before the Supreme Court and is not reviewable by this court.
 {¶ 29} Appellant's seventh cause of action asserts that any jailhouse statements made to the informant, Trent, should have been suppressed by the trial court. This, again, was a matter of record and is barred by res judicata in this post-conviction petition proceeding.
 {¶ 30} Appellant's eighth cause of action asserts that his former attorney, Cicero, violated attorney-client privilege by disclosing allegedly privileged information to law enforcement officials pursuing the case. Cicero, however, represented appellant only in the early stages of the case. He was succeeded by a pair of attorneys who were themselves replaced by a further pair who actually tried the case for the defense. The evidentiary material submitted by appellant in support of this petition does not establish how Cicero's alleged breach of attorney-client privilege specifically prejudiced his defense.
 {¶ 31} Appellant's ninth cause of action asserts that the prosecutor's office should have recused itself after appellant allegedly made threats against the prosecutors. Appellant asserts that, because of these alleged threats, the prosecutor's office had a "personal, vested interest in the outcome of the proceedings," causing prosecutors to offer excessively lenient treatment to co-defendants in exchange for testimony against appellant. "Were it possible for a defendant charged with serious crimes to disqualify the prosecutors trying the case from proceeding with the prosecution by threatening them, willful defendants would be handed a powerful weapon to disrupt the course of justice." Millsap v. Superior Court (1999), 70 Cal.App. 4th 196, 204, 82 Cal.Rptr.2d 733, 738. Absent a more concrete showing of likely prejudice, we agree with that court's conclusion that refusal to recognize an automatic, irrebuttable, conflict of interest on the part of the prosecution in such cases does not amount to a violation of appellant's constitutional rights.
 {¶ 32} Appellant's twelfth cause of action asserts that the prosecution improperly abused the subpoena process before the trial court. Appellant does not assert, however, that issuance of these subpoenaes is not fully disclosed in the record, and that this issue could not have been raised on direct appeal. This issue is accordingly barred by res judicata in the present proceeding.
 {¶ 33} Appellant's thirteenth and fourteenth causes of action assert that the prosecution withheld exculpatory evidence and solicited and presented perjured testimony. In the present proceedings, however, appellant presented no documentary evidence to support these claims. As such, the trial court did not err in declining to grant relief on this claim.
 {¶ 34} Appellant's fifteenth and eighteenth causes of action present a series of reasons for which trial counsel failed to provide the constitutionally guaranteed effective assistance of counsel at trial. Almost all these alleged deficiencies by trial counsel were fully addressed by the Supreme Court of Ohio on direct appeal, Conway, 2006-Ohio-2815, at ¶ 95 through 115, and are thus res judicata in this case. Any additional claims, such as trial counsel's failure to call upon a forensic entomologist or a psychologist, are easily ascertainable from the record and thus also subject to res judicata.
 {¶ 35} Appellant's seventeenth cause of action asserts that the trial court failed to provide sufficient funds for defense experts such as a forensic entomologist, forensic pathologist and cultural expert, and forensic psychologist. Again, the amount of funds granted by the trial court and the request by the defense for such funding were matters of record and may not be raised in this proceeding.
 {¶ 36} Appellant's nineteenth cause of action asserts that Ohio's death penalty statute, calling for execution by lethal injection, constitutes cruel and unusual punishment. This question was also raised by appellant in his direct appeal, and the Supreme Court of Ohio therein once again affirmed the constitutionality of Ohio's death penalty scheme.
 {¶ 37} Finally, appellant's twentieth cause of action asserts that cumulative error in his trial proceedings rendered his conviction and sentence void or voidable. Because we have found that none of the constitutional infirmities alleged in this post-conviction petition establishes substantial grounds for relief, we conclude that their cumulative impact does not rise to the level necessary to vacate appellant's conviction.
 {¶ 38} In summary, we find that none of the issues raised in appellant's fourth assignment of error establishes error in the trial court in denying his petition for post-conviction relief, and appellant's fourth assignment of error is overruled.
 {¶ 39} Based upon the foregoing, appellant's first, second, third, fourth, and fifth assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas denying his petition for post-conviction relief is affirmed.
Judgment affirmed.
Klatt, P.J., and Brown, J., concur.